UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CLIVEN D. BUNDY *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:16-cr-46-GMN-PAL <br><br> **ORDER** |

Pending before the Court is the Omnibus Motion in Limine (ECF No. 1332) filed by Defendants Steven A. Stewart, Eric J. Parker, and O. Scott Drexler ("Defendants") to exclude various references and images during trial. Co-defendants Ricky R. Lovelien and Melvin D. Bundy filed Motions for Joinder. (ECF Nos. 1340, 1414). The Government timely filed a Response. (ECF No. 1479). For the reasons stated below, the Court GRANTS in part and DENIES in part Defendants' Motion.

I.      **LEGAL STANDARD**

   **A. Motion in Limine**

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).  To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

**B. Applicable Rules of Evidence**

"Irrelevant evidence is not admissible." Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).

FRE 403 requires the Court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *see* Fed. R. Evid. 403.  "[P]rejudice alone is insufficient; *unfair* prejudice is required." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citing *United States v. Bailleaux*, 685 F.2d 1105, 1111 & n. 2 (9th Cir. 1982)).  Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Id.* (internal quotation marks and citation omitted).

As to FRE 404(b), evidence of prior crimes, acts, or wrongs is not admissible to prove the character of an accused in order to show action in conformity with that character. *Arambula-Ruiz*, 987 F.2d at 602; Fed. R. Evid. 404(b)(1). However, this evidence can be admitted under FRE 404(b) if the evidence is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). In order to be properly admitted under FRE 404(b), evidence must satisfy four requirements: "(1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

## II.     DISCUSSION

Defendants seek to preclude the following references to: (1) Defendants as "gunmen" and "snipers," or their "lawful firearms" as "assault rifles;" (2) any "guns, ammunition and gear seized after April 12, 2014[,] that was not present on April 12, 2014;" (3) Jerad and Amanda Miller; (4) Defendants' membership or affiliation with the "III%ers" or "militia;" and (5) "domestic terrorism." Defendants also seek to exclude images of them holding firearms or "affiliating with other III%ers or militia men at locations other than Bunkerville, Nevada." Defendants request these exclusions under FRE 401, 402, 403, and 404(b).

### A.  "Gunmen," "Snipers," and "Assault Rifles"

Defendants assert that "using the word 'gunmen' inaccurately and prejudicially misleads the jury into believing [Defendants] . . . are something much more than they really are." (MIL 4:27–5:1). Specifically, Defendants are concerned that the term will suggest, contrary to the evidence, that Defendants "were professional killers, or noted for their speed or skill in handling a gun." (*Id.* 4:21). They similarly object to the descriptor terms "sniper" and "assault

rifles" as an "inflammatory word[s]." (*Id.* 5:7–9, 6:4–6). Defendants also fear that these terms "improperly suggest[ Defendants] have an inadmissible history of bad acts," indicating the "prejudicial notion" that Defendants "are some sort of professionally trained assassins who have carried out strategic military missions in the past." (*Id.* 8:8 – 8:24). Specifically, Defendants explain that these terms signify that they either "*may* have committed prior bad acts as 'gunmen/snipers' with 'assault rifles' in the past" or "*actually* committed prior bad acts." (*Id.* 8:24–9:6).

The Government responds that it "intends to submit evidence that the defendants were armed with guns and as such were 'gunmen.'" (Gov't Resp. 7:1–2). As to "sniper," the Government similarly asserts that it will lay a foundation for the terminology:

> [T]he government intends to introduce evidence that the officers in the wash, based on their training and experience, perceived and described the defendants and others with weapons on the bridges to be acting like "snipers" or "sniper and spotter teams" and that the threat the officers felt on April 12 was in large part due to these sniper positions and sniper-like conduct by the gunmen defendants.

(*Id.* 7:2–7). Finally, the Government explains that it "does not intend to offer any evidence that the defendant acted as gunmen, snipers or utilized assault rifles *prior* [to] their involvement" in the current charges. (*Id.* 7:16–19) (emphasis added).

While the terms "gunman," "sniper," and "assault rifle" may have negative connotations, if these terms are accurate representations, then the strong probative value as indicated by the Government clearly outweighs any unfair prejudice. The accuracy of these terms will depend on the Government's ability to lay the proper foundation, as they intend to do based on their Response. The Court does not find these terms so inflammatory as to "arouse[ a] sense of horror" or "provoke[ an] instinct to punish," requiring their exclusion for unfair prejudice under FRE 403. *Skillman*, 922 F.2d at 1374. Further, the Court is not convinced by Defendants' speculation that these terms will "signify" prior bad acts to the jury. To exclude evidence on a

motion in limine, the evidence must be "clearly inadmissible on all potential grounds," which Defendants have not demonstrated here. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Accordingly, Defendants' Motion in Limine is denied as to these terms.

### B. Guns, ammunition, and gear not present on April 12, 2014

Defendants present an FBI Summary Spreadsheet of guns, ammunition, and gear ("Firearms List") with their Motion in Limine. (Firearms List, Ex. C to MIL, ECF No. 1333-1). The Firearms List includes items seized by law enforcement at some time after the events alleged in the Superseding Indictment. According to Defendants' expert, who reviewed photographs of the confrontation, the Firearms List contains items not present with Defendants in Bunkerville on April 12, 2014. As such, Defendants seek to exclude any guns, ammunition, or gear evidence "that was not present with them on April 12, 2014 . . . as having no probative value." (MIL 12:2–4). In the Government's Response, it requests that the Court "decline to exclude such items based solely on the defense expert's review of photographs at this early stage and instead determine whether evidence that emerges at trial provides a basis to conclude that any particular item was in a defendant's possession during the assault on April 12, 2014." (Gov't Resp. 9:9–14). To be admissible, the Government must first demonstrate the relevance of any firearm-related evidence, which includes that Defendants possessed these items during the confrontation. The Court grants Defendants' Motion to the extent that only guns, ammunition, and gear present with Defendants on April 12, 2014, are clearly relevant. However, the Court denies Defendants' Motion to exclude specific items from the Firearms List at this time as the Government will have the opportunity at trial to establish the relevance of any other firearm-related evidence on the list.

### C. The Millers

Defendants request exclusion of any reference to Jerad and Amanda Miller, who "tragically shot and killed Las Vegas Metropolitan police officers." (MIL 12:12–14). The

Government maintains that "it does not intend to reference the Millers' affiliation with the Bundys and their followers at trial unless somehow the defendants open the door to such subjects and even then the government would take the matter before the court before any mention of the Millers." (Gov't Resp. 10:21–11:1).  Accordingly, the Court preliminarily grants Defendants' motion to exclude any reference to the Millers.  Should an unforeseen issue arise during trial, the Government may request that the Court revisit this ruling outside the presence of the jury.

### D. "III%ers" and "militia"

Defendants seek to exclude any references to the "III%ers" or "militia" under FRE 403 because Defendants' "affiliation with the [suspect] group is (1) inherently prejudicial and (2) risks confusing [Defendants'] membership with [his] culpability." (MIL 13:4–5). Additionally, Defendants assert that "[b]oth groups have been attacked in the local and national press and labeled 'domestic terrorists.'" (*Id.* 13:10–11).  The Government responds that "the term militia is direct evidence of the criminal charges." (Gov't Resp. 8:19–20).  Additionally, the Government intends to prove that "the Bundy family, Ryan Payne, Pete Santili and others put out calls for help and calls to arms to people and groups they described as 'militia,' including the III%ers group." (*Id.* 8:11–15).  The Government urges the Court not to make a ruling excluding this language because Defendants have not identified specific evidence to exclude. (*Id.* 9:2–4).

Evidence of affiliation with suspect groups such as the mafia or a gang, without more, is commonly barred because under Rule 404(b) it constitutes impermissible "[e]vidence of other crimes, wrongs or acts [introduced] to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b)(1).  However, where evidence of such membership is directly related to the events in question, it does not constitute "other crimes" evidence barred by Rule 404(b). *United States v. Santiago*, 46 F.3d 885, 888–90 (9th Cir. 1995).  Instead,

"evidence of [group] affiliation is admissible when it is relevant to a material issue in the case." *United States v. Easter*, 66 F.3d 1018 (9th Cir. 1995).  The Ninth Circuit has similarly extended the reasoning in *Santiago* to analogous evidentiary challenges under FRE 403. *United States v. Rodriguez*, 766 F.3d 970, 986 (9th Cir. 2014); *see also United States v. Major*, 676 F.3d 803, 810 (9th Cir. 2012) (holding that the district court did not abuse its discretion in admitting gang affiliation evidence as relevant to motive).

Here, because the Government has proffered that the terms "III%ers" and "militia" are relevant to a material issue in the case, the Court will not exclude these terms at this time.  If evidence of such membership is directly related to the events in question, then it does not constitute "other crimes" evidence barred by Rule 404(b). *Santiago*, 46 F.3d at 888–90. Accordingly, the Court denies Defendant's Motion as to these terms.

### E. Domestic terrorism

Defendants assert that any references to "domestic terrorism" are "inherently prejudicial, [with] little probative value." (MIL 15:11–17).  The Government state that it "does not intend to prove the defendants were 'domestic terrorists' nor will it seek to admit evidence that they were 'domestic terrorists' or engaged in acts of 'domestic terrorism.'" (Gov't Resp. 8:20–22). However, the Government does anticipate that this term "may come in either through agents discussing their backgrounds or through the defendants' self-description in various social media posts or other contexts, or through evidence wherein conspirators used this term to call others to arms." (*Id.* 8:23–9:2).

The term "domestic terrorism" in and of itself is not unfairly prejudicial.  Therefore, the Court will not exclude the term generally.  Specifically, for an agent discussing his or her own background, training and experience, references to "domestic terrorism" must be relevant, and the Government is cautioned to keep any such testimony brief and limited in order to minimize any prejudice.

To the extent that "domestic terrorism" or "domestic terrorists" is used to *describe* Defendants, such a description is unfairly prejudicial as it is likely "arouses [a] sense of horror" or "provokes [an] instinct to punish." *Skillman*, 922 F.2d at 1374.  As such, the Court will exclude the term "domestic terrorism" or "domestic terrorist" to the extent that it may not be used to describe Defendants.  Nevertheless, Defendants' own statements are admissible against them under FRE 801(d)(2)(A), as are statements of co-conspirators made during and in furtherance of the conspiracy under FRE 801(d)(2)(E).  The Court finds that Defendants' own statements have a high probative value that outweighs the unfair prejudice of the description.  Accordingly, the Court will make an exception for instances wherein Defendants use the term to describe themselves as "domestic terrorists" pursuant to FRE 801(d)(2)(A).  The Court will also make an exception for statements by co-conspirators.  These statements have not been identified yet, so the Court is unwilling to either exclude or admit them.  The Court recognizes, however, that such co-conspirator statements *may* be highly probative.  The burden of admissibility remains with the Government to lay the proper foundation that the statements are relevant under FRE 401 and made during and in furtherance of the conspiracy under FRE 801(d)(2)(E).

**F.  Images with III%ers or militias other than at Bunkerville**

Lastly, Defendants seek to exclude images that "show them affiliating with the III%ers or a militia group" other than at Bunkerville on April 12, 2014. (MIL 15:17–24).  Similar to the references about the Millers above (*see supra* Part II.C.), the Government does not intend to introduce this evidence in its case-in-chief unless Defendants open the door. (Gov't Resp. 11:1–4).  The Court agrees that such evidence appears to lack any relevance at this time.  Accordingly, the Court preliminarily grants Defendants' Motion with respect to excluding images of Defendants with III%ers or militias other than at Bunkerville.  Should an unforeseen

issue arise during trial, the Government may request that the Court revisit this ruling outside the presence of the jury.

### G. Limiting Instruction

The Ninth Circuit has indicated that the prejudicial nature of evidence can also be mitigated by a proper limiting instruction. *See Rodriguez*, 766 F.3d at 986 (9th Cir. 2014). Defendants may draft and propose a limiting instruction for the Court to consider to reduce any possible prejudice from the nature of the evidence discussed herein.

### III.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion in Limine (ECF No. 1332) is **GRANTED in part and DENIED in part** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that Ricky R. Lovelien and Melvin D. Bundy's Motions for Joinder (ECF Nos. 1340, 1414) are **GRANTED**.

**DATED** this __7__ day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court