# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:16-cr-00046-GMN-PAL |
| vs. | ) | |
| | ) | **ORDER** |
| CLIVEN D. BUNDY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a Motion in Limine ("MIL") (ECF No. 2059) filed by

Defendants Eric Parker ("Parker"), O. Scott Drexler ("Drexler"), and Steven Stewart

("Stewart") (collectively, "Defendants") seeking to preclude the Federal Rule of Evidence

("FRE") 404(b) evidence noticed by the Government. The Government timely filed a

Response (ECF No. 2083), and Defendants filed a Reply (ECF No. 2011).[1]  For the reasons

discussed below, the Court DENIES Defendants' MIL.

## I.      BACKGROUND

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a

Superseding Indictment charging nineteen defendants with sixteen counts related to a

confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in

Bunkerville, Nevada. (ECF No. 27).  Defendants were first tried on February 6, 2017, which

ended in a mistrial upon jury deadlock on April 24, 2017 (hereinafter referred to as "Trial 1").

(*See* ECF No. 1887).  Retrial is currently set for July 10, 2017. (ECF No. 2053).

---

[1] Pursuant to the District of Nevada Local Rules: "Replies [to motions in limine] will be allowed only with leave of the court." (D. Nev. LR 16-3(a)).  Defendants have not requested leave to file their Reply.  Nevertheless, for good cause appearing, the Court will consider Defendants' Reply.

On May 19, 2017, the Government filed a Notice of Intent to Introduce Evidence Admissible under FRE 404(b), specifically regarding Defendants' membership in "Idaho III%", along with their involvement in Sugar Pine Mine: Operation Gold Rush ("Sugar Pine") and White Hope Mine: Operation Big Sky ("White Hope"). (Gov't 404(b) Notice, ECF No. 1983). As alleged in this Notice, the Sugar Pine incident occurred in April 2015, in Oregon, where Defendants "traveled to a mining site" on BLM-administered land and "conducted armed patrols and presented as a show of force in order to prevent federal officers from entering the property and taking any regulatory efforts with respect to the mine." (*Id.* 2:13–20). The White Hope incident occurred in August 2015, at a mining site in Montana administered by the United States Forest Service, where Defendants allegedly participated in similar "show of force" actions. (*Id.* 2:21–3:5). Upon receiving this Notice, Defendants filed the instant MIL to preclude this evidence.

## II.   LEGAL STANDARD

### A.  Motion in Limine

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [Federal Rules of Evidence] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change

his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).

## B. Applicable Rules of Evidence

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).

FRE 403 requires the Court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *see* Fed. R. Evid. 403. "[P]rejudice alone is insufficient; *unfair* prejudice is required." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citing *United States v. Bailleaux*, 685 F.2d 1105, 1111 & n. 2 (9th Cir. 1982)). Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Id.* (internal quotation marks and citation omitted).

As to FRE 404(b), evidence of crimes, wrongs, or other acts is not admissible to prove the character of an accused in order to show action in conformity with that character. *Arambula-Ruiz*, 987 F.2d at 602; Fed. R. Evid. 404(b)(1). However, this evidence can be admitted under FRE 404(b) if the evidence is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). In order to be properly admitted under FRE 404(b), evidence must satisfy four requirements: "(1) it must prove a material element of the offense for which the defendant is

now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

Nevertheless, the FRE 404(b) analysis is not required for "other acts" evidence if such evidence is actually "inextricably intertwined" with the charged offense. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987). Evidence is "inextricably intertwined" when it (1) may constitute a portion of the transaction giving rise to the criminal charge; or (2) may be necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Courts look to both temporal proximity and substantive similarly when determining that evidence is inextricably intertwined. *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (evidence of prior uncharged burglaries was "inextricably intertwined" with charged crimes where uncharged burglaries were obtained during period of government surveillance, involved similar pattern of conduct, and occurred close in time to charged crimes); *see United States v. Berkman*, 298 F.3d 788, 794 (9th Cir. 2002) (finding that evidence regarding drug mule's prior drug run was necessary to show why mule was later entrusted with more than $1 million worth of drugs).

III.    **DISCUSSION**

Defendants seek to preclude the evidence of III% membership, Sugar Pine, and White Hope as neither "inextricably intertwined" with the charged counts nor admissible under FRE 404(b). (*See* Defs. 404(b) MIL, ECF No. 2059). Additionally, Stewart argues that there is no evidence he "attended any of the rallies or joined the Idaho III%," so even if the evidence is admissible against Parker and Drexler, it should not be admitted as to him. (*Id.* 4:1–2).

The Court will first examine whether the evidence is inextricably intertwined with the charged offenses.  Defendants argue that the Idaho III%ers, Sugar Pine, and White Hope are not referenced in the Superseding Indictment. (Defs. 404(b) MIL 6:16–17).  Further, Defendants contend that this evidence is not necessary for the Government to tell a coherent and comprehensive story of the case because the Government did not need to introduce the evidence during Trial 1. (*Id.* 6:20–27).  The Government responds that the alleged conspiracy is on-going through the return of the Superseding Indictment, wherein Defendants "continued their involvement . . . by glorifying the results of the standoff and recruiting others to 'the movement' so that the federal government could not take any action against Bundy." (Gov't Resp. 6:14–17).  Further, the Government asserts that subsequent to the standoff, "many of Parker's own Facebook postings regarding Bundy Ranch reference III% . . . [and] Drexler's [sic] has Bundy tattooed along with the III% logo on his arm." (*Id.* 6:18–21).  As such, the Government contends that Defendants "clearly identify III% with their actions at Bundy Ranch." (*Id.* 6:21–22).  Additionally, the Government argues that Sugar Pine and White Hope are intertwined with "the overall goal of the charged conspiracy under 18 U.S.C. § 372" because for example, Parker recruits others to these later incidents by referring to them as a "potential 'Bundy Ranch type stand-off.'" (*Id.* 8:15–17).

First, as the Court has consistently stated throughout these proceedings, the conspiracy alleged in the Superseding Indictment is on-going, and therefore, Defendants' charges include the dates of the 2015 Sugar Pine and White Hope incidents.  Further, the Court finds that these incidents and Defendants' membership as III%ers are "inextricably intertwined" with the charged offense because Defendants were using the glorification of their success in Bunkerville to recruit others to these subsequent but similar causes.  The similarities include showing force against federal agents to prevent those agents from accomplishing their lawful actions.  As alleged in the Superseding Indictment, the Defendants traveled to Nevada with their firearms to

prevent the BLM from executing lawful court orders. Similarly, as alleged in the Government's Notice, both the Sugar Pine and White Hope incidents involved Defendants traveling to another state to prevent federal officers from enforcing federal mining regulations through a "show of force." (*See* Gov't 404(b) Notice 2:13–3:5). As such, the Court finds that the evidence has both temporal proximity because it occurred during the alleged conspiracy, and substantive similarity, as a show of force specifically to prevent federal officers from performing their official tasks. *See Rrapi*, 175 F.3d at 750. This evidence, as part of the conspiracy, constitutes a portion of the transaction giving rise to the criminal charge. *See Vizcarra–Martinez*, 66 F.3d at 1012. Accordingly, the Court finds that this evidence is inextricably intertwined and admissible, and the Court need not consider the evidence under FRE 404(b).[2]

As to Stewart, Defendants argue that because he was not involved with the III%ers, Sugar Pine, and White Hope, then the evidence should not be admissible against him. (Defs. 404(b) MIL 4:1–2); (Defs. Reply at 2, ECF No. 2110). However, because the Court finds this evidence to be inextricably intertwined with the conspiracy, and Stewart is charged in the conspiracy, this evidence is admissible as to him as well. His involvement or lack thereof goes to the weight of the evidence, as to be determined by the jury, not to the admissibility of the evidence. Accordingly, the Court DENIES Defendants' MIL.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion in Limine regarding 404(b) evidence (ECF No. 2059) is **DENIED**.

**DATED** this ___9___ day of July, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[2] As a part or in furtherance of the conspiracy, the Court finds the evidence both relevant under FRE 401 and more probative than prejudicial under FRE 403.