UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-46-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| CLIVEN D. BUNDY *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion to Dismiss (ECF No. 2087) filed by Defendants Eric Parker ("Parker"), O. Scott Drexler ("Drexler"), Steven Stewart ("Stewart"), and Ricky Lovelien ("Lovelien") (collectively, "Defendants").[1] The Government filed a Response. (ECF No. 2154). Defendants did not file a reply, and the time to do so has passed.

I. **BACKGROUND**

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27). The first trial for Defendants, along with two co-defendants, began on February 6, 2017 (hereinafter referred to as "Trial 1"). (ECF No. 1528).

On February 7, 2017, the Court granted the Government's Motion in Limine for a Protective Order regarding Undercover Employee Johnson that, *inter alia*, allowed Agent Johnson to testify at Trial 1 using his undercover pseudonym and prohibited the defense from asking questions regarding personal identifying information and his other investigations. (ECF

---

[1] Co-defendant Micah L. McGuire ("McGuire") filed a Motion for Joinder. (ECF No. 2103). For good cause appearing, the Court grants this Motion for Joinder.

No. 1539). On March 6, 2017, the Court granted in part, denied in part Defendants' Motion to Reconsider this Protective Order, ordering disclosure of Agent Johnson's true name to counsel only. (ECF No. 1664). On March 22 and 23, 2017, Agent Johnson testified on behalf of the Government during Trial 1 regarding an undercover operation he ran subsequent to the April 12, 2014 incident in Bunkerville, Nevada, where he posed as a documentary filmmaker and interviewed Parker and Drexler.[2] (ECF Nos. 1750, 1754). Portions of this interview were played during Agent Johnson's Trial 1 testimony. Trial 1 ended in a mistrial upon jury deadlock on April 24, 2017. (*See* ECF No. 1887). Retrial began for Defendants on July 10, 2017. (ECF No. 2142).

In the instant motion, Defendants seeks to dismiss the case based on an article dated May 16, 2017, entitled "How an Undercover FBI Agent Ended Up in Jail After Pretending to be a Journalist" that appears to be from a website called "The Intercept." (*See* Article, Ex. A to Mot. To Dismiss, ECF No. 2087-1). The article discusses that Agent Johnson "was arrested in Glendale, Colorado, while acting undercover as a journalistic investigator, for unauthorized practice of private investigations." (Mot. to Dismiss 2:8–10, ECF No. 2087). Defendants argue that the Government failed to timely disclose this evidence, which they claim is a violation of *Brady*, *Giglio*, and *Henthorn*. (*Id.* 2:19–21). Defendants acknowledge that "this violation may seem moot due to the mistrial;" however, they argue that it "prevented defendants from getting the fair trial that they are entitled to . . . and the only proper remedy is for this Court to order a dismissal." (*Id.* 4:10–13).

II. **LEGAL STANDARD**

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court ruled that the suppression by the prosecution of evidence favorable to an accused, upon request for disclosure by the accused, violates due process where the evidence is material to the guilt or punishment

---

[2] Agent Johnson did not interview Stewart or Lovelien.

of the accused. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Materiality is the touchstone in the determination of whether certain evidence qualifies as *Brady* material. *United States v. Dupuy*, 760 F.2d 1492, 1501 n.3 (9th Cir. 1985). The Supreme Court later expanded the concept of exculpatory evidence to include evidence that could be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150 (1972); *see also United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("*Brady*/*Giglio* information includes 'material . . . that bears on the credibility of a significant witness in the case.'") (omission in original) (quoting *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1461 (9th Cir. 1992)). Lastly, under *United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991), "the government has a duty, upon defendant's request for production, to inspect for material information the personnel records of federal law enforcement officers who will testify at trial." *United States v. Santiago*, 46 F.3d 885, 895 (9th Cir. 1995).

Dismissal of a valid indictment is an "extreme remedy," *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993), and a "drastic step" that is "disfavored," *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). "A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). A *Brady* violation justifies or requires dismissal of the indictment only in cases rising "to the level of flagrant prosecutorial misconduct." *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008).

### III. DISCUSSION

In their motion, Defendants argue that dismissal is necessary because evidence of Agent Johnson's arrest "cast[s] grave doubt on [his] credibility." (Mot. to Dismiss 3:20–22). They

further assert that Agent Johnson's "personnel file related to this arrest should have been turned over under *Henthorn*." (*Id.* 3:21–23). Alternatively, Defendants contend the evidence "should have been turned over under *Giglio* if he was given any promise to resolve that arrest in exchange for his testimony in trial." (*Id.* 3:22–25). Defendants additionally assert that the Government's Trial 1 Motion in Limine seeking a protective order regarding Agent Johnson made this a "willful violation" and the "concealment . . . precluded [the defense] from investigating anything about the witness," which is why they discovered this evidence only "after the conclusion of [Trial 1]." (*Id.* 4:1–9).[3]

The Government responds that "neither the arrest nor the alleged underlying conduct is admissible evidence and, therefore, immaterial." (Gov't Resp. 3:20–21, ECF No. 2154). The Government asserts that the alleged arrest is irrelevant to the instant case, as it was unrelated to Agent Johnson's undercover activity here and occurred eighteen months later. (*Id.* 4:18–21). The Government further contends that the arrest would not be considered impeachment evidence under *Giglio* because the regulatory violation of conducting a private investigation without a license is not probative of Agent Johnson's character for truthfulness or untruthfulness, as would be required to impeach him with extrinsic evidence under Federal Rule of Evidence ("FRE") 608(b).[4] (*See id.* 6:18–7:12). Additionally, the Government explains that there was no promise to resolve the alleged arrest in exchange for Agent Johnson's testimony, and the defense "advance[d] no evidence or information" to the contrary other than the mere suggestion. (*Id.* 7:12–21). Ultimately, the Government argues that "even if a *Giglio* violation occurred – which it most certainly did not – dismissal is not the appropriate remedy."

---

[3] The Court notes that the article specifically refers to Agent Johnson under his pseudonym, so the protective order would not have precluded Defendants from any related investigation. (*See* Article at 2).

[4] FRE 608 provides the general prohibition: "[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). However, FRE 608 then states: "But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness." *Id.*

(*Id.* 8:11–13).  Regarding the *Henthorn* allegations, the Government explains that it "conducted a Henthorn inquiry of the personnel records of [Agent] Johnson and its inquiry revealed no derogatory or disciplinary action related to any agent misconduct." (*Id.* 8:21–23).

As an initial matter, the Court finds that Defendants failed to meet their burden to establish a violation has occurred.  The Court is unconvinced at this point that Agent Johnson's alleged arrest is material to the instant case, as it is unrelated and does not appear to be probative of Agent Johnson's character for truthfulness or untruthfulness as would be required under FRE 608(b).  Further, Defendants' bare assertion of a possible promise to resolve the alleged arrest in exchange for testimony without any further evidence is also insufficient to establish any *Giglio* violation.  Regardless, any prejudice has clearly been negated by the new trial already in progress. (*See* ECF No. 2142).  As such, the Court cannot find that a *Brady*/*Giglio* violation. *See Strickler*, 527 U.S. at 281–82 (requiring that "prejudice must have ensued").  Lastly, the Court finds that the Government complied with their duty to inspect Agent Johnson's personnel files under *Henthorn*.  Should any changes occur regarding Agent Johnson's personnel record, the Court reminds the Government of its continuing duty inspect for material information the personnel records of federal law enforcement officers who will testify at trial. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) (noting that *Brady*'s duty to disclose is "ongoing" as "information that may be deemed immaterial upon original examination may become important as the proceedings progress"); *see also Santiago*, 46 F.3d at 895.

As the Court has found no *Brady*, *Giglio*, or *Henthorn* violation, there is no evidence of any prosecutorial misconduct, much less misconduct that could be described as "flagrant." *See United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008).  Accordingly, the Court denies Defendants' request for dismissal.

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 2087) is **DENIED**.

**IT IS FURTHER ORDERED** that McGuire's Motion for Joinder (ECF No. 2103) is **GRANTED**.

**DATED** this  15  day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court