JESS R. MARCHESE, ESQ.
Nevada bar # 8175
601 S. Las Vegas Boulevard
Las Vegas, NV 89101
(702) 385-5377 Fax (702) 474-4210
marcheselaw@msn.com
Attorney for Defendant **PARKER**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:16-cr-00046-GMN-PAL |
| | ) | |
| Plaintiff, | ) | **DEFENDANT ERIC J. PARKER'S** |
| | ) | **SENTENCING MEMORANDUM** |
| v. | ) | |
| | ) | |
| ERIC J. PARKER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Comes now the Defendant, ERIC J. PARKER, by and through his attorney, JESS R. MARCHESE, ESQ., and respectfully submits this Sentencing Memorandum in connection with his sentencing scheduled for February 8, 2018. The Memorandum is offered in addition to any evidence and/or argument adduced at his hearing on this matter. Mr. Parker respectfully requests that he be sentenced to of probation for a period of one year.

DATED this 29th day of January, 2018.

/s/ Jess R. Marchese

_____
JESS R. MARCHESE, ESQ.
Nevada Bar No. 8175
Attorney for Eric J. Parker

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

On March 2, 2016, Mr. Eric J. Parker (hereinafter "Mr. Parker") was named in a Sixteen-Count Superseding Criminal Indictment in the United States District Court, in the District of Nevada, Las Vegas. Mr. Parker was charged as follows: Count One with Conspiracy to Commit an Offense against the United States, in violation of 18 U.S.C. § 371; Count Two with Conspiracy to Impede or Injure a Federal Officer, in violation of 18 U.S.C. §372; Count Three with Use and Carry of a Firearm in Relation to a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §924(c) and §2; Count Five with Assault on a Federal Officer and Aiding and Abetting, in violation of 18 U.S.C. §111(a)(1), (b), and §2; Count Six with Use and Carry of a Firearm in Relation to a Crime of Violence, and Aiding and Abetting, in violation of 18 U.S.C. §924(c) and §2; Count Eight with Threatening a Law Enforcement Officer, and Aiding and Abetting, in violation 18 U.S.C. §115(a)(1)(B) and §2; Count Nine with Use and Carry of a Firearm in Relation to a Crime of Violence, and Aiding and Abetting, in violation of 18 U.S.C. §924(c) and §2; Count Twelve with Obstruction of the Due Administration of Justice, and Aiding and Abetting, in violation of 18 U.S.C. §1503 and §2; Count Fourteen with Interference with Interstate Commerce by Extortion, and Aiding and Abetting, in violation of 18 U.S.C. §1951 and §2; Count Fifteen with Use and Carry of a Firearm in Relation to a Crime of Violence, and Aiding and Abetting, in violation of 18 U.S.C. §924(c) and §2; Count Sixteen Interference with Interstate Commerce by Extortion and Aiding and Abetting, in violation of 18 U.S.C. §1951 and §2.

The conduct contained in the Indictment was alleged to have occurred beginning in at least March 2014, and continuing to on or about February 11, 2016. Mr. Parker was arrested on

1  March 3, 2016, and made his initial appearance before a United States Magistrate Judge on
2  March 21, 2016. At that time this Honorable Court ordered Mr. Parker detained, where he
3  remained in continuous federal custody until August 22, 2017.

4  On October 23, 2017, a single-count Superseding Criminal Information was filed in the
5  United States District Court, District of Nevada, Las Vegas, charging Mr. Parker with
6  Obstruction of Court Order and Aiding and Abetting, in violation of 18 U.S.C. §1509 and 18
7  U.S.C. §2 which occurred on or about April 12, 2014. On October 23, 2017, Mr. Parker appeared
8  before the Honorable Judge Gloria M. Navarro and pursuant to a written plea agreement, timely
9  pleaded guilty to the one-count Superseding Criminal Information charging Obstruction of Court
10 Order and Aiding and Abetting. Pursuant to the plea agreement, the Government agreed to
11 recommend, or not to oppose Mr. Parker's request that a particular sentence or sentencing range
12 is appropriate as well as also agreed to recommend a two-level reduction for acceptance of
13 responsibility.

14 The facts of the offense establish that since 1993, Mr. Cliven Bundy (hereinafter "Mr.
15 Bundy") failed to pay fees or obtain permits as he kept and grazed his cattle on his land grazing
16 allotment year-round, which constituted a trespass on public land. Due to the continued trespass,
17 the United States District Court for the District of Nevada ordered Mr. Bundy to remove his
18 cattle permanently from the allotment. In 2013, the Court issued two Orders. One Ordered Mr.
19 Bundy to remove his cattle permanently, and the other re-affirmed earlier Court Orders from
20 1998 and 1999 requiring Mr. Bundy to remove his cattle permanently from the allotment. Both
21 Orders declared the United States was authorized to seize and remove Mr. Bundy's trespassed
22 cattle if he did not comply with the Court's Order. One of the Orders specifically stated Mr.
23 Bundy was not to interfere with any removal.

24

1	The Bureau of Land Management (hereinafter "BLM") planned to impound and remove
2	Mr. Bundy's trespassed cattle. On April 5, 2014, the impoundment operation began. Mr. Bundy
3	alerted the public, including Mr. Parker, of his situation.  Specifically, he felt his family was
4	under impending physical attack from the BLM after incidents of force in which BLM agents
5	assaulted his family members. By the morning of April 12, 2014, hundreds of people, including
6	Mr. Parker, traveled to Bunkerville, Nevada protest those and other actions of the BLM. The
7	facts further establish that Mr. Parker was present at a rally held in Bunkerville, Nevada by Mr.
8	Bundy and his family. At this rally, Mr. Parker heard Mr. Bundy direct those present to go to the
9	BLM impoundment site by the Toquop Wash. Mr. Parker followed hundreds of other protestors
10	to the BLM impoundment site in a truck with Ricky Lovelein, O. Scott Drexler, and Steven
11	Stewart. Mr. Parker and other BLM protestors took positions on the interstate freeway I-15
12	overlooking the BLM impoundment site. While Mr. Parker was on top of the bridge, he had a
13	rifle in his possession.

14	BLM officers ordered the protestors via loud speaker to disperse and leave the area,
15	advising that they were interfering with the execution of federal court orders. Mr. Parker heard
16	the officers' announcements, but did not comply with the orders. Mr. Parker remained on the
17	northbound 1-15 bridge overlooking the impoundment site. The facts further establish that Mr.
18	Parker failed to comply with the officers' orders to leave, and in maintaining his presence on the
19	bridge overlooking officers while armed with a rifle, Mr. Parker interfered with and impeded the
20	officers in the performance of their duties pursuant to the a Court Order.

21	Consistent with the Presentence Report (hereinafter "PSR"), the plea agreement
22	negotiated by the parties reflects a Base Offense Level of fourteen (14). U.S.S.G. §2B3.1(a). An
23	increase was appropriately applied, arriving at an Adjusted Offense Level of seventeen (17).
24

1  Probation applied a two-level downward adjustment for acceptance of responsibility, pursuant to
2  U.S.S.G. §3E1.1(a), as well as a one-level downward adjustment for Mr. Parker's timely plea,
3  pursuant to U.S.S.G. §3E1.1(b). The Adjusted Offense Level, together with the applicable
4  reductions, results in a Total Offense Level of fourteen (14).

5        The PSR calculated Mr. Parker's criminal history score to be two (2), with a
6  corresponding criminal history category of II. The suggested guideline range of imprisonment
7  for a total offense level of fourteen (14) and criminal history category II is eighteen (18) months
8  to twenty-four (24) months. However, the statutorily authorized maximum sentence of one year
9  is less than the minimum of the applicable guideline range, therefore the guideline term of
10 imprisonment is twelve (12) months. Probation has recommended a sentence of Time Served,
11 and upon release from custody, a one-year term of supervised release. Although Probation's
12 guideline provisions state Mr. Parker is ineligible for probation, USSG §5B1.1, comment (n.2),
13 the statutory provisions in the PSR express Mr. Parker is eligible for no more than five years
14 probation because the offense is a misdemeanor. 18 U.S.C. §3561(c)(2). The parties' negotiated
15 plea agreement provides that both parties will recommend a sentence of probation pursuant to
16 USSG and 18 U.S.C. §3553 and §3561(c)(2). The plea agreement further states Mr. Parker may
17 argue for no less than one year of probation. The plea agreement also provides Mr. Parker may
18 seek a downward variance.

19       Mr. Parker recognizes that the PSR has calculated his criminal history category and made
20 a recommendation on sentencing. He also understands that the court will make its own
21 calculation and arrive at a base offense level, criminal history category and corresponding
22 guideline range. Taking into consideration the nature of the current offense and the criminal
23 history that makes up his background, Mr. Parker requests the court will recognize his limited
24

involvement in the overall offense, as well as his acceptance of responsibility and timely plea. In light of this, Mr. Parker respectfully requests a downward variance and imposition of a term of probation for a period of one year. Such a sentence would serve the ends of justice while not being greater than necessary.

**ARGUMENT**

**I.   The Nature of the Offense and Conduct of Mr. Parker Support the Requested Term of One Year of Probation.**

In fashioning an appropriate sentence, the court may consider unlimited information regarding the defendant's background, character or conduct. 18 U.S.C. § 3661. Accordingly, the court has wide discretion and is certainly permitted to consider all relevant information whether or not it is taken into account by the guidelines.  It is well settled that the federal sentencing guidelines are merely advisory rather than mandatory. *United States v. Booker,* 543 U.S. 220 (2005).  18 U.S.C. § 3553(a) requires that the sentence be "sufficient, but not greater than necessary…." to accomplish the guidelines articulated purposes.  The sentence should embody the contemplated need:

>   (A) To reflect the seriousness of the offense, to promote respect for the law,    and   to provide just punishment for the offense;
>   (B) To afford adequate deterrence to criminal conduct;
>   (C) To protect the public from further crimes of the defendant;
>   (D) To provide the defendant with needed educational and vocation training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In determining the appropriate sentence, the court shall consider a number of factors, including, but certainly not limited to, the "nature and circumstances of the offense," together with the "characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Consideration of the history

and characteristics of the defendant are not merely permitted but, in fact, required when a court crafts a sufficient sentence. *United States v. White,* 506 F.3d 635, 644 (8th Cir. 2007).

The nature and circumstances of the current offense and the characteristics of Mr. Parker show that a sufficient but not greater than necessary sentence would be a term of probation for a period of one year. Mr. Parker has become very humbled by this overall experience, given the amount of time and thought he has been able to dedicate to assessing his decision-making and involvement. Mr. Parker's involvement in the instant offense is his most serious criminal conduct to date. The facts suggest that, although Mr. Parker participated in Mr. Bundy's rally, Mr. Parker was simply one of hundreds of followers rallying for a cause he believed in at the time. Not only was Mr. Parker not the mastermind or leader of the operation, he accepted responsibility for his limited role in rally and his individual contribution to the obstruction of a federal Court Order given his interference with law enforcement.

Mr. Parker has accepted responsibility and understands the seriousness of his offense. Mr. Parker understands and has accepted that in acting as a "follower" instead of a leader, he allowed himself to get caught up in the emotion and intimidating environment of such a powerful rally. In atonement for his actions, Mr. Parker has sought to promote respect for the law and assist authorities in his prosecution. For example, Mr. Parker timely notified authorities of his intention to enter a plea of guilty. This permitted the Government to avoid preparing for an additional trial, and allowed the Government to allocate their resources to other matters. Mr. Parker has also demonstrated his respect for law as a result of this criminal case by complying with all Court ordered conditions of release and pretrial supervision since his release on a Personal Recognizance bond on August 22, 2017. Since his release, there have been zero infractions of his Pretrial Release conditions.

For the greater majority of Eric's life he has been a law-abiding citizen minus two misdemeanor convictions. Mr. Parker intends to continue to be a productive member of society once he is sentenced. Due to the humbling and lengthy experience of being a defendant in a federal criminal case, Mr. Parker's incarceration away from his wife and children over the last almost2q two years has adequately deterred him from criminal conduct in the future. Mr. Parker hopes to return to life as a functioning member of society, and a sentence of a term of probation for one year will ensure that.

### A. <u>Variance Requested</u>.

In accordance with the stated purposes of 18 U.S.C. § 3553(a)(2), when sentencing the court may consider the offense characteristics as well as the treatment needed and the most effective manner to achieve the purposes. While the case facts may not support a departure under the guidelines, departures and variances are clearly different. "There may well be cases that would not justify a departure under the Guidelines but which are appropriate for a variance." *United States v. Myers,* 503 F.3d 676, 684 (8th Cir. 2007) (Citations omitted). "Factors ordinarily considered irrelevant in calculating the advisory guideline range, or in determining whether a guideline departure is warranted, can be relevant in deciding whether to grant a variance." *United States v. Chase,* 560 F.3d 828, 830 (8th Cir. 2009). To that end, the court is not precluded from considering a variety of factors and applying a variance to arrive at a sufficient sentence.

Pursuant to Mr. Parker's plea agreement, he is free to argue for further variances from the Guideline calculations 18 U.S.C. §3553. In the instant case, the facts are inconsistent with an argument that Mr. Parker was the moving force behind a criminal operation. Mr. Parker also readily admitted the details of his offense and his involvement, cooperation, and compliance with Mr. Bundy's rally against the Government. Also while not yet middle-aged, Mr. Parker is in the

prime of his life and if given the opportunity for probation, Mr. Parker will be motivated to continue to work as an electrician and reintegrate himself into society after his year and a half in custody.

These are the variety of factors arguably contemplated by §3553 and warranting the wide discretion granted the court in applying a variance and fashioning a reasonable sentence that is "sufficient, but not greater than necessary."  A sentence of a term of probation certainly reflects the seriousness of the crime committed and provides the necessary punishment for the offense. Perhaps equally as important, such a sentence also affords Mr. Parker the necessary guidance to ensure he abstain from any further involvement in criminal activity as well as continue the rest of his adult life as a functional member of society.

## II. Mr. Parker's Personal History and Characteristics Strongly Support a Sentence of One Year of Probation.

### A. Personal and Family History.

Mr. Parker is currently thirty-four (34) years old. He was born in Anaheim, California to on Dawn Vance on August 6, 1983. Unfortunately, Mr. Parker never knew or has any information on his biological father. Mr. Parker is the eldest of two children born to Ms. Vance, and has a brother, Robert Parker. Mr. Parker does not maintain regular contact with his brother.

As a child, Mr. Parker never had a steady home. He moved constantly over the course of nine years due to his stepfather's work with a traveling carnival. For the remainder of his childhood Mr. Parker continued to move. He lived for two years with his mother in Phoenix, Arizona, before moving in with his aunt and uncle in Fallon, Nevada. Mr. Parker moved in with his aunt and uncle because his mother was going through a "difficult time." Mr. Parker then moved to Hailey, Idaho for two years and then moved back to Phoenix, Arizona. Mr. Parker ultimately moved back to Hailey, Idaho at age twenty-three (23), where he has since remained.

Mr. Parker's adult life became incredibly more stable. Mr. Parker is married to Andrea Parker and together they have two children, Lochlain, who is eleven (11), and Freya, who is five (5). Ms. Parker is also currently expecting the couple's third child. Mr. and Mrs. Parker have been together since 2000, and married since 2008. Mr. Parker has great relationships with his wife and children and his family has given their unwavering support to him over the course of his criminal case. Mr. Parker's family has also described him as a very passionate, community-involved person who is well liked in the community and is willing to lend a hand and assist his neighbors whenever they are in need. Mr. is also very involved in the lives of his children.

Mr. Parker's love and close relationships with his wife, children, and community have been his driving force to reintegrate into society. His family is also willing and eager to be the support system Mr. Parker needs if given the opportunity for probation.

### B. Education and Employment History.

Mr. Parker attended high school at Churchill County High School in Fallon, Nevada while living with his aunt and uncle. Although Mr. Parker did not graduate high school, he received training and completed an electrician apprenticeship program. Mr. Parker's employment history has included various jobs as an electrician. While he is currently unemployed since being released from custody, before Mr. Parker was in custody he was employed at Roberts Electric in Hailey, Idaho as an electrician from 2009 to 2015. Also during that time between 2011 and 2012, Mr. Parker obtained additional electrician work at Buffalo Electric in Hailey, Idaho. Although Mr. Parker's employment with these two companies was eventually terminated, it was by no wrongdoing of Mr. Parker, but simply because of a shortage of available work. He has since resumed his trade and is slowly working his way back to full-time work.

Overall, Mr. Parker's consistent employment experience in the electrician field and his dedicated work ethic are positive qualities he possesses. This experience and dedication provides Mr. Parker the needed encouragement and motivation that will help ensure his success while on probation and his ability to continue his employment as an electrician.

### C. Substance Abuse History.

Mr. Parker fortunately does not have an extensive substance abuse history. Mr. Parker's most significant indiscretion regarding substance abuse was when he was arrested in Idaho for Driving Under the Influence of Alcohol (hereinafter "DUI"). The way Mr. Parker handled that situation is especially important to note. Since Mr. Parker's conviction for DUI, he has not consumed alcohol. Mr. Parker has demonstrated an ability to abstain from alcohol and maintain that sobriety for the six years after his arrest. Mr. Parker's identification and correction of a problem, in this instance his alcohol consumption, is another example of his ability to take responsibility and acceptance for his actions as well as improve his quality of life by remedying whatever the problem is he is facing. Also, once Mr. Parker stopped drinking alcohol, he attended Alcoholics Anonymous meetings, which has been able to assist him in refraining from drinking. Mr. Parker also does not and does not use illegal drugs. This was evidenced by Eric's Longbow interview where he indicated to the undercover agents that he does not drink. Overall, Mr. Parker's continued sobriety prior to this criminal case and impending sentencing further demonstrate his ability to be successful if given the opportunity for probation.

### CONCLUSION

The Court is well aware of the facts and circumstances surrounding this case after presiding over two trials, evidentiary hearings, voluminous motion practice, and a mistrial. It is doubtful that counsel can educate the court much more on Mr. Parker other than to say that what

was portrayed of Eric at the trials were not necessarily who Eric is as a person. Specifically, the Government chose to pick out snapshots of Eric's social media and life in order to paint him as a horrible human being to the jury. The undersigned can personally attest that this is untrue. Eric may be a lot of things, but Eric is a genuine individual that deeply cares about the issues surrounding his country. Although some may disagree with his views which is the beauty of country of diversity where we are all allowed to express our beliefs, his beliefs are dogmatic and free from a hidden agenda. Further, contrary to what was attempted to be displayed in the court proceedings, he is not someone that believes in violence. There is a big difference between carrying a gun lawfully and using it unlawfully.

Mr. Parker therefore respectfully requests that as this court crafts his sentence, the many factors that have brought him to this point be taken into consideration and reflected in the sentence. For the above stated reasons, Mr. Parker respectfully requests that this Honorable Court apply an appropriate variance and impose a sentence of a term of probation for one year with the special conditions recommended on Page 39 of the PSR with the exception of condition #1 as to O. Scott Drexler. The court is well aware that NO defendant has been successfully convicted of a conspiracy count. In fact, both Mr. Drexler and Mr. Parker were acquitted of the conspiracy counts. Therefore, since no conspiracy ever existed, it follows that there are no co-conspirators thereby making condition #1 incongruous with the court record.

DATED this 29th day of January, 2018.

/s/ Jess R. Marchese

JESS R. MARCHESE
Nevada Bar No. 8175
Attorney for Eric J. Parker

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was motion was filed on January 29, 2018 via the Southern District of Nevada ECF system to the all registered following recipients:

| | |
|---|---|
| Steven W. Myhre<br>Acting United States Attorney<br>United States Attorney's Office<br>steven.myhre@usdoj.gov | Daniel Schiess<br>Assistant United States Attorney<br>United States Attorney's Office<br>daniel.schiess@usdoj.gov |
| Nadia Ahmed<br>Assistant United States Attorney<br>United States Attorney's Office<br>nadia.ahmed@usdoj.gov | Erin "Eat a salad" Creegan<br>Special Assistant United States Attorney<br>United States Attorney's Office<br>erin.creegan@usdoj.gov |

_____/s/_____
Employee of Jess R. Marchese, Esq.