UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br>vs.<br><br>ERIC PARKER,<br><br>    Defendant. | Case No.: 2:16:cr-00046-GMN-NJK-11<br><br>**ORDER DENYING WRIT OF ERROR OF CORAM NOBIS** |

Pending before the Court is Petitioner Eric Parker's Petition for Writ of Error *Coram Nobis*, (ECF NO. 3591). The Government filed a Response, (ECF No. 3594), and Petitioner filed a Reply, (ECF No. 3600). For the reasons discussed below, the Court DENIES the Petition.

I. **BACKGROUND**

On March 2, 2016, a grand jury in this district returned a Superseding Criminal Indictment against Petitioner and numerous others in relation to the Bundy Ranch impoundment. (*See generally* Indictment, ECF No. 27). Petitioner was charged with 18 U.S.C. § 371 - Conspiracy to Commit an Offense against the United States (Count 1); 18 U.S.C. § 372 - Conspiracy to Impede and Injure Federal Officer (Count 2); 18 U.S.C. § 111(a)(1) and (b) and § 2 - Assault on a Federal Officer (Count 5); 18 U.S.C. § 115(a)(1)(B) and § 2 - Threatening a Federal Law Enforcement Officer (Count 8); 18 U.S.C. § 924(c) and § 2 - Use and Carry of a Firearm in Relation to a Crime of Violence (Counts 3, 6, 9 and 15); 18 U.S.C. § 1503 and § 2 - Obstruction of the Due Administration of Justice (Count 12); 18 U.S.C. § 1951 and § 2 - Interference with Interstate Commerce by Extortion (Count 14); and 18 U.S.C. §1952 and § 2 - Interstate Travel in Aid of Extortion (Count 16). (*See generally id.*). Defendant pleaded not guilty to all the charges. (*See* Minutes, ECF No. 194).

Due to the complex nature of the case, and after some defendants plead guilty, this Court ordered the remaining defendants to trial, grouping them into three trial groups referred to as Tiers 1, 2, and 3, and ordering them tried in the sequence of 3-1-2. (*See* Dec. 13, 2016, Order, ECF No. 1106).  Petitioner was joined in the first trial as part of the Tier 3 defendants. (*Id.*). That trial began on February 6, 2017, and ended in a guilty verdict on some counts as to some co-defendants, but, as to Petitioner, the jury was unable to reach a verdict, and the Court declared a mistrial. (*See* Jury Trial Day 32 Mins., ECF No. 1887).  The mis-tried counts were re-tried to a jury beginning on July 10, 2017. (*See* June 15, 2017, Order, ECF No. 2061).  With respect to the Petitioner, that trial ended in an acquittal as to some counts and a hung jury/mistrial as to others. (*See* Jury Trial Day 24 Minutes, ECF No. 2283).

Rather than proceed to a third trial on the mis-tried counts, the government entered into a Plea Agreement with Petitioner, which was entered on the docket on October 23, 2017. (Plea Agreement, ECF No. 2763).  Among the terms of the Plea Agreement, Petitioner agreed to plead to a Superseding Criminal Information charging him with one count of Obstruction of Court Order in violation of 18 U.S.C. §§ 1509 and 2, a Class A misdemeanor, in return for the dismissal of the remaining counts in the Superseding Criminal Indictment. (*See id.*).

The trial of the Tier 1 defendants began on October 30, 2017. (*See* Jury Trial Day 1 Minutes, ECF No. 2796).  That trial ended when the Court declared a mistrial on December 20, 2017, based on its finding that *Brady* violations had occurred. (*See* Jury Trial Day 16 Minutes, ECF No. 3041).  Based on those findings, the Court dismissed the Superseding Criminal Indictment against the Tier 1 defendants on January 8, 2018. (*See* J. Dismissal, ECF No. 3117. Thereafter, the Government moved to dismiss the Indictment against the Tier 2 defendants. (Mot. Dismiss, ECF No. 3178).  This Court dismissed the Indictment pursuant to the motion. (Feb. 7, 2018, Order, ECF No. 3179).

On August 9, 2018, the Court conducted its Sentencing Hearing and imposed sentence on Petitioner, adjudging imprisonment of "time served" to be followed by terms and conditions of Supervised Release for a one-year period. (*See* J., ECF No. 3319).

More than five years later, Petitioner filed the instant petition arguing that he satisfies all the requirements for a writ of error *coram nobis*.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1651, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of error *coram nobis* is a "highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). The writ is "used only to review errors of the most fundamental character." *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002). To qualify for a writ of error *coram nobis*, the petitioner must show "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) ("*Hirabayashi* requirements"). "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F.3d at 760.

## III. DISCUSSION

The Government argues that the petition should be denied because: (1) the Petition is too late; (2) there was no *Brady* error in his case; and (3) none of Petitioner's new evidence proves actual innocence. (Resp. 6:1–3, ECF No. 3594). The Court begins with the first *Hirabayashi* requirement.

### A. Whether a More Usual Remedy is Available

Petitioner argues that there is no other remedy available for him to challenge his conviction from 2018 because he is not in custody and has already served his sentence. (Pet. 5:3–7, ECF No. 3591). The Government seems to concede this point because their Response is focused on the remaining *Hirabayashi* requirements. Thus, the Court finds a more usual remedy is unavailable.

### B. Whether Valid Reasons Exist for Not Attacking Conviction Earlier

The Court finds that Petitioner does not present valid reasons for not attacking his conviction sooner. A petition for a writ of error *coram nobis* is not subject to a specific statute of limitations. *United States v. Morgan*, 346 U.S. 502, 507 (1954) (*coram nobis* petition allowed "without limitation of time"). "In lieu of a specific statute of limitations, courts have required *coram nobis* petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005), abrogated on other grounds by *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010); *see also United States v. Riedl*, 496 F.3d 1003, 1007 (9th Cir. 2007) (denying *coram nobis* relief where defendant waited more than six years after conviction to file a petition, noting that such relief is only available where petitioner has "exercis[ed] due diligence" in bringing her concern promptly to the attention of the courts) (citation omitted); *Maghe v. United States*, 710 F.2d 503, 503–04 (9th Cir. 1983) (denying *coram nobis* petition as untimely where claim could have been earlier raised and there were "no sound reasons" for the delay) (internal quotations omitted). Furthermore, the "law does not require a petitioner to challenge his conviction at the earliest opportunity; it requires only that he have sound reasons for not doing so." *United States v. Njai*, 312 Fed. App'x. 953, 954 (9th Cir. 2009).

Here, this Court sentenced Petitioner on August 9, 2018. (*See generally* J.). He filed his *coram nobis* petition five and a half years later, on March 26, 2024. (*See generally* Pet.).

Petitioner's justification for this long delay is unpersuasive to the Court. First, Petitioner argues that he was not made aware of the reasons for why this Court dismissed the cases against the Tier 1 and Tier 2 defendants until after he was sentenced. (Pet. 5:18–6:6). Next, Petitioner argues that he just recently learned of a follow-up memorandum authored by Bureau of Land Management Special Agent and Lead Investigator Larry Wooten[1] which detailed additional alleged violations committed by the United States Government in connection with this case. (*Id.* 7:2–5). And lastly, Petitioner argues that he just came into possession of a United States Postal Service ("USPS") Tracking record showing that the Government failed to provide the statutorily required pre-impoundment notice mandated by 43 CFR 4150.4-1(a) which renders the Court Order in his case unauthorized and unlawful. (Reply 5:24–26, ECF No. 3600). Ultimately, Plaintiff argues that he would have attacked the conviction earlier if he had known why the Court dismissed the Tier 1 and Tier 2 cases and known about Wooten's follow-up memorandum and the USPS tracking record.

The Government, on the other hand, outlined the several ways Petitioner could have attacked his conviction sooner. First, Petitioner could have filed a motion to withdraw his plea before the imposition of sentence in August 2018. (Resp. 7:21–22). Petitioner's August 2018 Sentencing Hearing occurred seven months after the dismissal of the Tier 1 defendants, and six months after the dismissal of the Tier 2 defendants, which the Government argues was enough time to file a motion to withdraw his plea and claim that the *Brady* violations in Tier 1 and Tier 2 changed his mind about the plea. The Court agrees with the Government and emphasizes that the Tier 1 trial was a public trial, and its minutes have always been viewable on the Court's

---

[1] In late October to early November 2017, during the Government's prosecution of the Tier 1 Defendants, a Whistleblower Complaint authored by Larry Wooten surfaced acknowledging multiple violations of the *Bundy* Defendants' civil and constitutional rights by law enforcement officers in connection with the United States' arrest, detention, and prosecution of the *Bundy* Defendants. This along with other disclosures and revelations of the Government's conduct in prosecuting the *Bundy* Defendants, led this Court to dismiss all the charges against the Tier 1 Defendants with prejudice.

docket. Moreover, trial transcripts have been viewable since March 2018. The reasons for why this Court dismissed the cases against the Tier 1 defendants is part of the public record. The Tier 2 defendants' case was dismissed on the same grounds as Tier 1 and its record was similarly available via public records.

    Second, Petitioner could have filed a petition for *habeas* relief under Title 28, United States Code, Section 2255 ("§ 2255 Motion") after he was sentenced in August 2018. (Resp. 9:3–4). That relief was available to him for the entirety of his one-year period of Supervised Release: November 16, 2018, to November 15, 2018. (*See* J. at 3) (period of Supervised Release commencing upon release from "time served" that commenced on November 16, 2018); *see* also *Matus-Leva*, 287 F.3d at 761 (holding writ of error *coram nobis* precluded where more usual remedy of § 2255 motion available during period of supervised release, finding that supervised release was "custody" for purposes of § 2255) (quotations in the original); and *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) ("in custody" for purposes of § 2255 motion includes periods of supervised release and probation). In fact, one of Petitioner's co-defendants filed a § 2255 Motion in October 2018 basing his claim for relief on the very same *Brady* violations that Petitioner asserts here. (*See* Delemus § 2255 Mot. at 14–16, ECF No. 3365).

    And as to the Wooten follow-up memorandum and USPS tracking record, Petitioner fails to show how his delay in using it to attack his conviction was sound. The Government argues and the Court agrees that this new information could have been raised by Petitioner in a Rule 33 Motion for New Trial based on newly discovered evidence. *See* Fed. R. Crim. P. 33(b)(1). Petitioner had three years from the date he was adjudicated as guilty–i.e., until

August 9, 2021–to file a Rule 33 Motion for New Trial. (J. at 1).² Thus, Petitioner fails to establish the second *Hirabayashi* requirement.

Because the failure to meet one of the requirements under *Hirabayashi* is fatal, the Court need not analyze the remaining requirements.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Writ of Error *Coram Nobis*, (ECF No. 3591), is **DENIED**.

**DATED** this __19__ day of November, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court

---

² Even if Petitioner learned of this new information after August 9, 2021, he still fails to establish how this new information rises to the level of an error of the most fundamental character (*Hirabayashi* requirement four). Petitioner argues that "the error of his conviction is of the most fundamental character because the basis for his conviction, Obstruction of a Court Order, would not have been proven beyond a reasonable doubt if the case had gone to trial as the Government would not have been able to prove that the BLM officers were acting under a valid or lawful court order." (Reply 10:1–5). However, Petitioner stipulated to a detailed set of facts in his Plea Agreement where he admits that he was on the bridge overlooking the officers' position in the Wash on April 12, and that he remained there with his rifle after the officers "continuously ordered the people to disperse and leave the area." He stipulated that by remaining on the bridge after the order to disperse, he was making a "show of force to the officers and [ ] thereby willfully interfered with and impeded the officers in the performance of their duties pursuant to federal court orders." (Plea Agreement at 5). Thus, whether notice of the impoundment was properly mailed or not has nothing to do with the officer's orders to leave the wash area on April 12 or with Parker's admitted interference with those orders by remaining in place on the bridge with his rifle. Similarly, the accusations in the Wooten memos about conduct of BLM agents have nothing to do with Parker's decision to remain on the bridge.